# In the United States Court of Federal Claims

BID PROTEST
Nos. 19-1268C & 19-1417C
Filed Under Seal:  December 13, 2019[*]
Reissued:  January 10, 2020

|  |  |  |
|---|---|---|
| | ) | |
| NAVISTAR DEFENSE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Post-Award Bid Protest; Competition in |
| THE UNITED STATES, | ) | Contracting Act ("CICA"); Sole-Source |
| | ) | Award; 41 U.S.C. § 3304; FAR § 1.704; |
| Defendant, | ) | FAR § 6.302-7; Motion For Judgment |
| | ) | Upon The Administrative Record; RCFC |
| v. | ) | 52.1. |
| | ) | |
| OSHKOSH DEFENSE, LLC, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |
| | ) | |
| NAVISTAR DEFENSE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

[*] This Memorandum Opinion and Order was originally filed under seal on December 13, 2019 (ECF No. 62).  The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted from the Memorandum Opinion and Order.  The parties filed a joint status report on January 10, 2020 stating that no redactions are necessary (ECF No. 64).  And so, the Court is reissuing its Memorandum Opinion and Order, dated December 13, 2019.

*David R. Hazelton*, Counsel of Record, *Kyle R. Jefcoat*, *Dean W. Baxtresser*, Of Counsel, Latham & Watkins LLP, Washington, DC, for plaintiff.

*Albert S. Iarossi*, Trial Attorney, *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Eugenée M. Gray*, Of Counsel, United States Army Legal Services Agency, for defendant.

*Scott Arnold*, Counsel of Record, *Justin A. Chiarodo*, *Luke W. Meier*, *Stephanie M. Harden*, *Michael J. Montalbano*, Of Counsel, Blank Rome, LLP, Washington, DC, for defendant-intervenor.

## <u>MEMORANDUM OPINION AND ORDER</u>

<u>GRIGGSBY, Judge</u>

## I.     INTRODUCTION

In these two directly-related post-award bid protest matters, Navistar Defense, LLC ("Navistar") challenges the United States Department of the Army's ("Army") decision to procure certain tactical vehicles from Oshkosh Defense, LLC ("Oshkosh"), in connection with a 2019 sole-source contracting action. *See generally* 1st Compl. Navistar also challenges the Army's alleged failure to comply with the automatic stay requirement under the Competition in Contracting Act ("CICA") during Navistar's Government Accountability Office ("GAO") protest of the Army's contracting action. *See generally* 2nd Compl. As relief, Navistar requests, among other things, that the Court require the Army to terminate and cancel any orders awarded pursuant to the 2019 sole-source contracting action and to declare that the Army's failure to cease performance of the orders protested by Navistar before the GAO was arbitrary, capricious, or contrary to law. *See generally* 1st Compl.; 2nd Compl.

The parties have filed cross-motions for judgment upon the administrative record, pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* Pl. 1st Mot.; Pl. 2nd Mot.; Def. Mot.; Def.-Int. Mot. Navistar has also moved to strike the Declaration of Lt. Col. Michael K. Riley; the Army's Determination and Findings dated September 19, 2016; and certain references to a July 12, 2019, telephone call between counsel, filed in support of the government's consolidated cross-motion. Pl. 1st Mot. to Strike; Pl. 2nd Mot. to Strike. Navistar has also filed motions for a temporary restraining order and for a

preliminary injunction, and to complete the administrative record and for leave to conduct limited depositions. Pl. Mot. for TRO and PI; Pl. Mot. to Complete AR.

For the reasons discussed below, the Court: (1) **DENIES** Navistar's motions for judgment upon the administrative record; (2) **GRANTS** the government's consolidated cross-motion for judgment upon the administrative record; (3) **GRANTS** Oshkosh's cross-motion for judgment upon the administrative record; (4) **GRANTS-IN-PART** Navistar's motion to strike the Declaration of Lt. Col. Michael K. Riley; (5) **GRANTS** Navistar's motion to strike the Army's Determination and Findings dated September 19, 2016, and certain references to the July 12, 2019, telephone call between counsel; (6) **DENIES-AS-MOOT** Navistar's motions for a temporary restraining order and for a preliminary injunction, and to complete the administrative record and for leave to conduct limited depositions; and (7) **DISMISSES** the complaints.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Factual Background

In these directly-related post-award bid protest matters, Navistar challenges the Army's decision to procure certain tactical vehicles from Oshkosh in connection with a 2019 sole-source contracting action. *See generally* 1st Compl. Navistar also challenges the Army's alleged failure to comply with the automatic stay requirement under CICA, during Navistar's protest of the Army's contracting action before the GAO. *See generally* 2nd Compl.

### 1.    The FMTV Contract

As background, in 2009, the Army awarded Contract W56HZV-09-D-0159 (the "FMTV Contract") for the production of the A1P2 variant of tactical vehicles to Oshkosh as part of the Army's family of medium tactical vehicles program. *See generally* AR Tab 14. The tactical vehicles procured under the FMTV Contract are multi-purpose transport and utility vehicles that are rapidly deployable for worldwide operations, for use in both combat operations and civil disaster relief. AR Tab 106 at 5895.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the administrative record ("AR"); Navistar's motions for judgment upon the administrative record ("Pl. 1st Mot." and "Pl. 2nd Mot."); the government's consolidated cross-motion for judgment upon the administrative record ("Def. Mot."); and Oshkosh's cross-motion for judgment upon the administrative record ("Def.-Int. Mot."). Except where otherwise noted, the facts cited herein are undisputed.

The solicitation for the FMTV Contract provides that "the purpose of this Requirements contract is to provide the Government with the ability to acquire Family of Medium Tactical Vehicles (FMTVs) in any configuration as described herein." AR Tab 5 at 337.  While no minimum or maximum order quantity is specified in the FMTV Contract, the solicitation provides that an initial award of 875 trucks and 681 trailers is planned for FY09 and that a total of 23,341 vehicles is estimated to be required over the initial 5-year contract period.  *Id.*

The FMTV Contract was initially set to expire on September 30, 2014.  AR Tab 110 at 5948.  But, the Army issued a series of contract modifications that extended the contract's expiration date to August 25, 2019.  *See generally* AR Tabs 48, 58, 64, 66, 74, 90, 106-110.

Specifically, on September 30, 2014, the Army issued a justification and approval to extend the term of the FMTV Contract from September 2014 to September 2015.  AR Tab 110 at 5948.  Thereafter, the Army issued another justification and approval to add an additional 1,262 vehicles to the FMTV Contract in June 2015.  AR Tab 109 at 5935.

On July 24, 2015, the Army issued a justification and approval to further extend the FMTV Contract to September 2016.  AR Tab 108 at 5926, 5932.  On January 29, 2016, the Army issued yet another justification and approval adding an additional 1,551 vehicles to the FMTV Contract.  AR Tab 107 at 5912, 5925.

### 2.     The September 2016 Justification And Approval

Specifically relevant to this dispute, in September 2016, the Army issued a justification and approval that extends the FMTV Contract until August 25, 2019 (the "September 2016 J&A").  AR Tab 106 at 5895.  The September 2016 J&A provides for additional funding— estimated to be $575 million—to "procure an estimated 1,774 FMTVs."  *Id.*  The Army justified this modification to the FMTV Contract upon the grounds that "an unacceptable delay . . . will occur if this contract action is competed" and that "[o]nly the FMTVs from Oshkosh can meet the customer's validated requirements within the required timeframe."  *Id.* at 5898, 5902.

### 3.     Navistar's 2016 GAO Protest

After the Army modified the FMTV Contract in September 2016, Navistar protested the Army's decision to extend the FMTV Contract and to procure additional tactical vehicles before

the GAO.  1st Compl. at ¶ 39.  Navistar and the Army subsequently settled that protest.  AR Tab 2 at 212-14.  The settlement agreement between the parties provides, in relevant part, that:

> This Settlement Agreement constitutes a full release and satisfaction of Navistar Defense of any and all claims, actual or perceived, known or unknown, arising out of Navistar Defense's GAO Protests No. B-401865.9, B-401865.10, and B-401865.11.  Except as provided in paragraph 6 above, Navistar Defense remises, releases and discharges the Army, its officers, and employees of and from all civil liabilities, obligations, claims, appeals and demands which it now has or hereafter may have, arising out of or in any way related to Navistar Defense's GAO Protests No. B-401865.9, B-401865.10, and B-401865.11.

AR Tab 2 at 213-214.

### 4.      The Army's 2019 Sole-Source Contracting Action

Beginning in February 2019, the Army ordered additional tactical vehicles from Oshkosh under the FMTV Contract.  AR Tab 121.4 at 6995-96; AR Tab 121.6 at 7014-15.  On June 17, 2019, the Army issued a Determination and Findings (the "2019 D&F"), which authorizes a modification of the FMTV Contract to "[extend] the delivery period [for the FMTV Contract] from 24 August 2020 to 24 August 2021, for a total of 12 years, for all orders issued during the contract's 10 year ordering period."  AR Tab 111 at 5959.  The 2019 D&F explains that "exceptional circumstances" require extending the delivery period under the FMTV Contract, namely that "[t]he extension [of the delivery period under the FMTV Contract] bridges the production gap between [the FMTV A1P2 tactical vehicle and a new FMTV A2 tactical vehicle] and mitigates impacts to the industrial base."  *Id.* at 5958.

On June 20, 2019, the Army amended the September 2016 J&A to increase the estimated number of vehicles that would be required under the FMTV Contract from 1,774 vehicles to 3,690 vehicles, and to increase the estimated value of the contract from $575 million to $895 million.  AR Tab 105 at 5886.  The Army justified this contract modification upon the ground that "there are less than 3 months remaining to issue any orders for [FMTV A1P2 tactical vehicles] prior to the 25 August 2019 FMTV A1P2 contract expiration date."  *Id.* at 5889.  The Army's June 20, 2019 amendment also explains that "[t]his amendment will add an estimated 1,916 trucks valued at an estimated additional $320 [million] due to unanticipated additional ordered quantities from FMS and other DoD customers."  *Id.*

### 5.      Navistar's 2019 GAO Protest

On July 8, 2019, Navistar filed a protest before the GAO challenging the Army's 2019 sole-source contracting action.  AR Tab 1 at 2.  Navistar voluntarily withdrew this protest on August 26, 2019.  AR Tab 168 at 11798.

Navistar subsequently commenced these two bid protest matters on August 23, 2019, and September 16, 2019, respectively.  *See generally* 1st Compl; 2nd Compl.

### B.      Procedural Background

Navistar commenced these post-award bid protest matters on August 23, 2019, ("*Navistar* 1") and September 16, 2019 ("*Navistar* 2"), respectively.  *See generally* 1st Compl; 2nd Compl.  On August 26, 2019, Oshkosh filed an unopposed motion to intervene in *Navistar* 1, which the Court granted on August 27, 2019.  *See generally* Mot. to Intervene; Order, Aug. 27, 2019.

On August 23, 2019, Navistar filed motions for a temporary restraining order and for a preliminary injunction in *Navistar* 1.  *See generally* Pl. Mot. for TRO and PI.  On September 17, 2019, Navistar filed a motion to complete the administrative record and for leave to conduct limited depositions in *Navistar* 1.  *See generally* Pl. Mot. to Complete AR.

On October 11, 2019, Navistar filed motions for judgment upon the administrative record in both cases.  *See generally* Pl. 1st Mot.; Pl. 2nd Mot.  On October 25, 2019, the government filed a consolidated response and opposition to Navistar's motions for judgment upon the administrative record and a cross-motion for judgment upon the administrative record.  *See generally* Def. Mot.

On October 25, 2019, Oshkosh filed a response and opposition to Navistar's motion for judgment upon the administrative record and a cross-motion for judgment upon the administrative record in *Navistar* 1.  *See generally* Def.-Int. Mot.  On October 30, 2019, Navistar filed motions to strike portions of the government's consolidated motion for judgment upon the administrative record and certain exhibits thereto, or, in the alternative, to complete the administrative record.  *See generally* Pl. 1st Mot. to Strike; Pl. 1st Mem.; Pl. 2nd Mot. to Strike.

On November 1, 2019, Navistar filed a response and opposition to the government's and Oshkosh's respective cross-motions for judgment upon the administrative record and a reply in

support of its motions for judgment upon the administrative record.  *See generally* Pl. 1st Resp.; Pl. 2nd Resp.  On November 12, 2019, the government filed a consolidated reply brief in support of its cross-motion for judgment upon the administrative record.  *See generally* Def. Reply.  On November 12, 2019, Oshkosh filed a reply brief in support of its cross-motion for judgment upon the administrative record.  *See generally* Def.-Int. Reply.

On November 26, 2019, the Court held oral argument on the parties' motions.  *See generally* Oral Arg. Tr.  These matters having been fully briefed, the Court resolves the pending motions.

## III.    LEGAL STANDARDS

### A.    Bid Protest Jurisdiction

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  In bid protest cases, this Court reviews agency actions under the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard.  *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the APA).  Under this standard, an "'award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

In this regard, the United States Court of Appeals for the Federal Circuit has explained that, "[w]hen a challenge is brought on the first ground, the test is 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a "heavy burden" of showing that the award decision had no rational basis.'"  *Id.* (quoting *Impresa*, 238 F.3d at 1332-33).  "'When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.'"  *Id.* (quoting *Impresa*, 238 F.3d at 1333).  In addition, when reviewing an agency's procurement decision, the Court should recognize that the agency's decision is

entitled to a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977). "The [C]ourt should not substitute its judgment for that of a procuring agency . . . ." *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997). And so, "[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of applicable procurement law." *Info. Tech. & Applics. Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003) (citation omitted).

The Court's standard of review "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As long as there is "'a reasonable basis for the agency's action, the [C]ourt should stay its hand even though it might, as an original proposition, have reached a different conclusion.'" *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C. Cir. 1971)). But, if "the agency 'entirely fail[s] to consider an important aspect of the problem, [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency,'" then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

## B.    Judgment Upon The Administrative Record

Unlike a summary judgment motion brought pursuant to RCFC 56, "the existence of genuine issues of material fact does not preclude judgment on the administrative record" under RCFC 52.1. *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242-43 (2011); *see* RCFC 56. Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)).

## C.    The Competition In Contracting Act And Cardinal Change

The Competition in Contracting Act generally requires that procuring agencies engage in full and open competition. 41 U.S.C. § 3301(a). But, the government may choose to forego full and open competition and issue a sole-source contract under certain circumstances. 10 U.S.C. §

2304(c)(1)-(3); *see also Innovation Dev. Enterprises of Am., Inc. v. United States*, 108 Fed. Cl. 711, 723 (2013).

If an agency plans to conduct a sole-source procurement, it must document that decision through a justification and approval.  10 U.S.C. § 2304(f)(1), (3); *Innovation Dev. Enterprises of Am., Inc.*, 108 Fed. Cl. at 723.  A justification and approval requires a written justification of the government's actions, certification of the accuracy of the statements and a signature from either a contracting officer or senior government official.  *See* 10 U.S.C. § 2304(f)(3).

A sole-source award may be set aside, if it lacks a rational basis or violates a statute or regulation.  *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1086 (Fed. Cir. 2001).  In this regard, the Federal Circuit has held that a cardinal change—a modification to a contract that is outside the scope of the original procurement—violates CICA and renders the government in breach.  *AT&T Communications, Inc.*, 1 F.3d 1201, 1205 (Fed. Cir. 1993) (holding that "'a cardinal change . . . occurs when the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for.'") (quoting *Allied Materials & Equip. Co. v. United States*, 215 Ct. Cl. 406 (1978))); *see also* 41 U.S.C. §3301(a)(1).  And so, the full and open competition requirement under CICA "cannot be avoided by using the device of contract modification."  *CCL v. United States*, 39 Fed. Cl. 780, 791 (1997).

This Court has recognized, however, that CICA does not require a new bid procedure for every change to a contract.  *Id*.  Rather, only contract modifications that fall outside the scope of the original competed contract fall under the statutory competition requirement.  *Id*. at 789 n.18.

The Federal Circuit has adopted the standard for determining whether a contract modification falls within the scope of the original contract established by the United States Court of Claims.  *Northrop Grumman Corp. v. United States*, 50 Fed. Cl. 443, 465 (2001).  This standard provides that:

> Under established case law, a cardinal change is a breach.  It occurs when the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for. By definition, then a cardinal change is so profound that it is not redressable under the contract, and thus renders the government in breach.

*AT&T Communications, Inc.*, 1 F.3d at 1205 (quoting *Allied Materials & Equip. Co. v. United States*, 569 F.2d 562, 563–64 (1978)).  The Federal Circuit has also recognized that a contract modification generally falls within the scope of the original procurement if potential bidders would have expected it to fall within the contract's changes clause.  *Id.*

To determine whether a contract modification falls within CICA's competition requirement, the Court examines whether the contract as modified materially departs from the scope of the original procurement.  *Id.*  To that end, the Court's cardinal change analysis focuses upon the scope of the entire original procurement in comparison to the scope of the contract as modified.  *Id.*  In this regard, the Court has observed that there are two tests when considering the cardinal change doctrine:  First, when the dispute is between the contractor and the government, the Court looks to whether the change was within the scope of the contract.  *Northrop Grumman Corp.*, 50 Fed. Cl. at 465.  Second, when the dispute originated within a third-party competitor protest, the Court will decide whether the change was within the scope of the competition.  *Id.*

Lastly, when potential bidders would have expected a modification to fall within the changes clause of the contract, the modification will be found to be within the scope of the original procurement.  *Id.*; *see also AT&T Communications, Inc.*, 1 F.3d at 1207.  But, when a contract modification is found to be outside the reasonable expectations of the bidders, the government must show that it adequately advised the bidders that such a change might occur.[2]  *Id.*

### D.     Motions To Supplement The Administrative Record And Motions To Strike

The Federal Circuit held in *Axiom Resource Management, Inc. v. United States*, that the "parties' ability to supplement the administrative record is limited" and that the administrative record should only be supplemented "if the existing record is insufficient to permit meaningful review consistent with the [Administrative Procedure Act]."  564 F.3d 1374, 1379-81 (Fed. Cir.

---

[2] This Court has recognized that the factors considered important to the cardinal change analysis include modifications to the type of product or service being delivered or performed; the quantity of the product or service; the performance period; and the cost between the solicitation as competed and the contract as modified.  *Northrop Grumman Corp. v. United States*, 50 Fed. Cl. 443, 466 (2001).  The Court has also recognized that changes in the type of product or service that were not anticipated due to their lack of resemblance to the original procurement are usually found to be outside the scope of the procurement.  *Id.*

2009); *see also Caddell Constr. Co., Inc. v. United States*, 111 Fed. Cl. 49, 93 (2013). The Federal Circuit has also recognized that the Supreme Court held in *Camp v. Pitts* that "'the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1379 (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

This focus is maintained to prevent courts from using new evidence to "convert the arbitrary and capricious standard into effectively de novo review." *L-3 Commc'ns EOTech, Inc. v. United States*, 87 Fed. Cl. 656, 671 (2009) (internal quotation marks omitted); *see also Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000). And so, this Court has interpreted the Federal Circuit's directive in *Axiom*, within the context of bid protest matters, to mean that supplementation of the administrative record is permitted to correct mistakes and fill gaps, but is not permitted when the documents proffered are unnecessary for an effective review of the government's decision. *L-3 Commc'ns EOTech, Inc.*, 87 Fed. Cl. at 672.

Motions to strike are governed by RCFC 12(f), which states that: "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." RCFC 12(f). "[F]ederal courts generally are reluctant to respond favorably to motions to strike." *Kansas City Power & Light Co. v. United States*, 131 Fed. Cl. 161, 165 (2017) (citing *Reunion, Inc. v. United States*, 90 Fed. Cl. 576, 580-81 (2009)). And so, "[i]t has been the practice of the United States Court of Federal Claims to decline to grant a motion to strike, where the moving party is unable to show prejudice or confusion." *Waltner v. United States*, 98 Fed. Cl. 737, 766 (2011) (citations omitted). The Court may also deny a motion to strike when it does not consider the challenged documents in its decision-making process. *California Indus. Facilities Resources, Inc. v. United States*, 104 Fed. Cl. 617, 619 (2012).

### E.     Injunctive Relief

Lastly, under its bid protest jurisdiction, the Court "may award any relief [it] considers proper, including declaratory and injunctive relief." 28 U.S.C. § 1491(b)(2); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). In deciding whether to issue a permanent injunction, the Court "considers:  (1) whether . . . the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the [C]ourt withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of

injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."); *see also Centech Grp., Inc.*, 554 F.3d at 1037.  In this regard, the United States Court of Appeals for the Federal Circuit has held that:

> No one factor, taken individually, is necessarily dispositive.  If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others.  If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citations omitted).

A plaintiff who cannot demonstrate success upon the merits cannot prevail upon a motion for injunctive relief.  *Cf. Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd*., 357 F.3d 1319, 1325 (Fed. Cir. 2004) (finding that a plaintiff who cannot demonstrate likely success upon the merits cannot prevail upon its motion for preliminary injunctive relief).  Given this, this Court has found success upon the merits to be "the most important factor for a court to consider when deciding whether to issue injunctive relief." *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007)).  But, success upon the merits, alone, is not sufficient for a plaintiff to establish an entitlement to injunctive relief.  *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) (("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citations omitted)).

## III.   LEGAL ANALYSIS

The parties have filed cross-motions for judgment upon the administrative record on the issues of whether:  (1) the Army's 2019 sole-source contracting action constitutes a cardinal change; (2) the Army's extension of the FMTV Contract term and delivery period violates CICA; (3) the Army procured goods under an expired contract; (4) the Army improperly

procured, or bundled, tactical vehicles for foreign military sales under the FMTV Contract; (5) the government violated CICA's automatic stay; and (6) Navistar is entitled to injunctive relief. *See generally* Pl. 1st Mot.; Pl. 2nd Mot.; Def. Mot.; *see also* Def.-Int. Mot.

In its consolidated cross-motion, the government also raises the issue of whether Navistar has waived certain arguments related to Navistar's 2016 protest before the GAO.  Def. Mot. at 30-31.  In addition, Navistar has moved to strike the Declaration of Lt. Col. Michael K. Riley; the Army's Determination and Findings dated September 19, 2016; and certain references to a July 12, 2019, telephone call between counsel, filed in support of the government's consolidated cross-motion.  *See generally* Pl. 1st Mot. to Strike; Pl. 2nd Mot. to Strike.  Lastly, Navistar has filed motions for a temporary restraining order and for a preliminary injunction, and to complete the administrative record and for leave to conduct limited depositions.  *See generally* Pl. Mot. for TRO or PI; Pl. Mot. to Complete AR.

For the reasons that follow, the Court:  (1) **DENIES** Navistar's motions for judgment upon the administrative record; (2) **GRANTS** the government's consolidated cross-motion for judgment upon the administrative record; (3) **GRANTS** Oshkosh's cross-motion for judgment upon the administrative record; (4) **GRANTS-IN-PART** Navistar's motion to strike the Declaration of Lt. Col. Michael K. Riley; (5) **GRANTS** Navistar's motion to strike the Army's Determination and Findings dated September 19, 2016, and certain references to the July 12, 2019, telephone call between counsel; (6) **DENIES-AS-MOOT** Navistar's motions for a temporary restraining order and for a preliminary injunction, and to complete the administrative record and for leave to conduct limited depositions; and (7) **DISMISSES** the complaints.

### A.     The Court Grants Navistar's Motions To Strike

As an initial matter, the Court **GRANTS-IN-PART** Navistar's motion to strike the Declaration of Lt. Col. Michael K. Riley (the "Riley Declaration"), which has been filed in support of the government's consolidated cross-motion.  A careful review of the Riley Declaration shows that paragraphs 3 to 17 of the declaration provide background and views regarding, among other things, the Army's September 2016 J&A and the Army's decision to amend this justification and approval.  Def. Mot. Ex. A at ¶¶ 3-17.  These portions of the Riley Declaration do not correct mistakes, or fill any gaps, in the existing administrative record before the Court.  *See generally* AR.  Given this, the Court concurs with Navistar that paragraphs 3 to

17 of the Riley Declaration are not properly before the Court.  Pl. 1st Mem. at 4-7; *L-3 Commc'ns EOTech, Inc. v. United States*, 87 Fed. Cl. 656, 672 (2009) (supplementation of the administrative record is permitted to correct mistakes and fill gaps, but is not permitted when the documents proffered are unnecessary for an effective review of the government's decision).

The government persuasively argues, however, that other paragraphs of the Riley Declaration have been appropriately filed in this bid protest litigation.  Def. Resp. to Pl. 1st Mot. to Strike at 5-6.  Notably, paragraphs 18 to 20 of the Riley Declaration address the harm that the Army will allegedly suffer if the production of the tactical vehicles at issue in this litigation is enjoined.  Def. Mot. Ex. A at ¶¶ 18-20.  This Court has held that it may consider information that is not contained in the administrative record, as part of the Court record in a bid protest dispute, if the information pertains to the factors that the Court weighs in deciding whether to grant injunctive relief.  *See, e.g.*, *AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 366-67 (2009) ("In general, it is appropriate to add evidence pertaining to prejudice and the factors governing injunctive relief to the record in a bid protest—not as a supplement to the AR, but as part of this Court's record.").  Because paragraphs 18 to 20 of the Riley Declaration address Navistar's request for injunctive relief, the information contained in these paragraphs of the Riley Declaration is appropriately before the Court.  And so, the Court **GRANTS-IN-PART** Navistar's motion to strike the Riley Declaration and the Court STRIKES paragraphs 3 to 17 of this declaration.

The Court must also strike the Army's Determination and Findings dated September 19, 2016, and certain references to a July 12, 2019, call between counsel, which have been filed in support of the government's consolidated cross-motion.  Pl. 1st Mem. at 7-9; *see also* Pl. 2nd Mot. to Strike.  Neither of these matters are included in the administrative record.  *See generally* AR.  Navistar also persuasively argues that this information is not necessary for the Court to conduct a meaningful review of these bid protest disputes.  Pl. 1st Mem. at 4; Pl. 2nd Mot. to Strike at 5; *see also L-3 Commc'ns EOTech, Inc. v. United States*, 87 Fed. Cl. 656, 672 (2009).  And so, the Court **GRANTS** Navistar's motion to strike and STRIKES the Army's

Determination and Findings, dated September 19, 2016, and any references to a July 12, 2019, call between counsel, from the government's consolidated cross-motion.[3]

### B.      Navistar May Not Pursue Certain Claims Related To The FMTV Contract

Turning to the merits of Navistar's claims, the administrative record shows that Navistar is precluded from raising certain claims related to the FMTV Contract, because Navistar waived these claims under the terms of the settlement agreement that resolved its 2016 protest before the GAO.  Navistar alleges in this litigation that the Army's 2019 sole-source contracting action is arbitrary, capricious, or contrary to law, because, among other reasons, the Army improperly placed orders for tactical vehicles under an expired contract and bundled certain foreign military sales and domestic sales orders under the FMTV Contract.  Pl. 1st Mot. at 30, 34-35.  The record evidence shows, however, that Navistar may not pursue such claims in this litigation.

It is undisputed that Navistar previously protested the Army's decision to extend the FMTV Contract and to procure additional tactical vehicles under that contract before the GAO in 2016.  Compl. at ¶ 39; Def. Mot. at 8, 30.  It is also undisputed that Navistar and the Army entered into a settlement agreement to resolve that GAO protest on November 14, 2016.  AR Tab 2 at 212-14.  And so, the terms of that settlement agreement are relevant to Navistar's claims in this litigation.

A review of the settlement agreement makes clear that Navistar waived all claims related to the FMTV Contract and the Army's 2016 decision to modify the FMTV Contract in the settlement agreement.  Specifically, the settlement agreement provides, in relevant part, that:

> *This Settlement Agreement constitutes a full release and satisfaction of Navistar Defense of any and all claims, actual or perceived, known or unknown,* arising out of Navistar Defense's GAO Protests No. B-401865.9, B-401865.10, and B-401865.11.  Except as provided in paragraph 6 above, Navistar Defense remises, releases and discharges the Army, its officers, and employees of and from all civil liabilities, obligations, claims, appeals and demands which it now has or hereafter may have, arising out of or in any way related to Navistar Defense's GAO Protests No. B-401865.9, B-401865.10, and B-401865.11.

---

[3] Because the Court strikes the aforementioned information from the government's consolidated cross-motion, the Court **DENIES-AS-MOOT** Navistar's motions in the alternative to complete or supplement the administrative record.  Pl. 2nd Mot. to Strike at 6-7.

AR Tab 2 at 213-214 (emphasis supplied).  Because the settlement agreement expressly releases the Army from any civil liability related to Navistar's challenge of the FMTV Contract and the Army's decision to modify that contract in 2016, the Court agrees with the government that Navistar may not pursue claims related to the decision to extend the contract in 2016 or a challenge of the terms of the FMTV Contract as they relate to foreign military sales.  And so, the Court must **DENY** these claims.

### C.     The Army's 2019 Contracting Action Is Not A Cardinal Change

A review of the administrative record also makes clear that the Army's 2019 sole-source contracting action is not a cardinal change, as Navistar suggests.

It is well-established that a cardinal change "occurs when the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for."  *AT&T Communications, Inc.*, 1 F.3d 1201, 1205 (Fed. Cir. 1993) (quoting *Allied Materials & Equip. Co. v. United States*, 569 F.2d 562, 563–64 (1978)).  And so, to determine whether the Army's 2019 modification of the FMTV Contract falls within CICA's competition requirement, the Court considers whether the Army's 2019 decision to procure an additional 1,916 tactical vehicles under the FMTV Contract materially departs from the scope of the original procurement for that contract.  *Id.*; *see also Northrop Grumman Corp. v. United States*, 50 Fed. Cl. 443, 465 (2001).  The administrative record reveals that the Army's modification is not a cardinal change for several reasons.

First, the record evidence shows that the Army's 2019 sole-source contracting action did not materially differ from the original procurement for the FMTV Contract, because the FMTV Contract authorizes the Army to procure the number of tactical vehicles that it requires during the term of that contract.  The FMTV Contract provides, in relevant part, that "[t]his is a requirements contract for the supplies or services specified, and effective for the period stated."  AR Tab 14 at 1442.  The solicitation for the FMTV Contract also provides that "[t]he purpose of this requirements contract is to provide the [g]overnment with the ability to acquire [FMTVs] in any configuration described herein."  AR Tab 5 at 337.  And so, the plain terms of the FMTV Contract and the solicitation for this contract make clear that the FMTV Contract authorizes the Army to procure the number of tactical vehicles that it needs during the term of the contract.

The Army's 2019 decision to order additional tactical vehicles from Oshkosh is also consistent with the terms of the FMTV Contract and the solicitation.  The administrative record shows that the Army ordered an additional 1,916 tactical vehicles from Oshkosh, between February and June 2019, to satisfy its need for additional tactical vehicles for Department of Defense and foreign military sales orders.  AR Tab 121.4 at 6995-96; AR Tab 121.6 at 7014-15; AR Tab 105 at 5889 (stating that additional tactical vehicles were required "due to unanticipated additional ordered quantities from FMS and other DoD customers").  As discussed above, the FMTV Contract and the solicitation for the contract expressly provide that the Army may order the number of tactical vehicles that it requires under the contract.  AR Tab 14 at 1442.  Given this, the record evidence makes clear that the Army's decision in 2019 to order additional tactical vehicles falls within the scope of the plain terms of the FMTV Contract and the original procurement for this contract.  *See generally* AR Tabs 5, 14, 105.

The record evidence also shows that the Army's 2019 decision to order additional tactical vehicles falls within the scope of the FMTV Contract as modified by the Army in 2016.  It is without dispute that the Army modified the FMTV Contract in September 2016 to procure additional tactical vehicles from Oshkosh.  AR Tab 106 at 5895.  In this regard, the administrative record shows that the Army's September 2016 J&A extends the term of the FMTV Contract to August 25, 2019.  *Id.*  The September 2016 J&A also provides that "[t]his action adds an estimated $575M in FY 2017 through FY 2019 FMTV requirements, resulting in a total contract duration of ten years and a total estimated contract value of $6.24 billion."  *Id.*  Because the September 2016 J&A extends the term for the FMTV Contract to August 25, 2019, the record evidence shows that the Army's procurement of additional tactical vehicles between February and June of 2019 appropriately took place during the term of the FMTV Contract as modified.

The record evidence also shows that Navistar and other potential offerors were adequately notified of the possibility that the Army would procure additional tactical vehicles during the term of the FMTV Contract.  As discussed above, the Army's September 2016 J&A makes clear that the Army extended the term of the FMTV Contract for three years, and increased the value of that contract, for the purposes of procuring additional tactical vehicles.  *Id.* Given this, the record evidence makes clear that Navistar, and any other potential offerors, should have expected the possibility that the Army would decide to increase the number of

tactical vehicles ordered under the FMTV Contract.  *Northrop Grumman Corp.*, 50 Fed. Cl. at 465.

The record evidence similarly shows that the Army appropriately justified its decision to procure the additional tactical vehicles at issue in this litigation as a sole-source procurement. The Army's September 2016 J&A explains that the Army decided to extend the FMTV Contract, and to procure additional tactical vehicles from Oshkosh, due to concerns about the unacceptable delay that would occur if the Army conducted a competitive procurement for these vehicles. Notably, the September 2016 J&A provides that:

> In order to compete this requirement, new sources would need time to build and provide vehicles for testing, resulting in approximately a 24 month delay in delivery of vehicles to the end user.

AR Tab 106 at 5903.  The record evidence also shows that the Army explains in the September 2016 J&A that "[o]nly FMTVs from Oshkosh can meet the customer's validated requirements within the required timeframe of initial vehicle deliveries."  *Id.* at 5902.  And so, the Army provided a justification for its decision to forgo a full and open competition to procure these additional vehicles.

The record evidence also shows that the Army remained concerned about the potential for an unacceptable delay of the delivery of additional tactical vehicles when the Army decided to procure additional tactical vehicles from Oshkosh in 2019.  In its June 2019 amendment to the September 2016 J&A, the Army explains that it needed to procure the additional vehicles from Oshkosh because it would have no contractual mechanism to order the tactical vehicles produced by Oshkosh once the FMTV Contract expires on August 25, 2019.  AR Tab 105 at 5889.[4]  The Army's Determination and Findings dated June 17, 2019, also explains that "[t]he extension [of

---

[4] During oral argument, the government argued that the Army's 2019 sole-source contracting action did not materially alter the FMTV Contract, because the increase in the value of the FMTV Contract was only a 55 percent dollar increase ($575 million to $895 million) from the value of the FMTV Contract as modified in 2016.  Oral Arg. Tr. at 41:13-41:20.  Navistar's argument that potential bidders would not have anticipated that the Army would order additional tactical vehicles in 2019 is also belied by the evidence in the record showing that the Army modified the FMTV Contract on several occasions to order additional tactical vehicles.  Notably, on June 12, 2015, the Army issued a justification and approval to add an additional 1,262 vehicles to the FMTV Contract.  AR Tab 109 at 5935.  Thereafter, on January 26, 2016, the Army also issued a justification and approval adding an additional 1,551 tactical vehicles to the FMTV Contract.  AR Tab 107 at 5912.

the delivery period for the FMTV Contract] bridges the production gap between the FMTV A1P2 and FMTV A2 and mitigates impacts to the industrial base." AR Tab 111 at 5958. And so, the Court concurs with the government that these documents explain and support the Army's 2019 sole-source contracting action.

The Court is also unpersuaded by the arguments that Navistar advances to show that the Army's 2019 sole-source contracting action constitutes a cardinal change. First, Navistar contends that the Army could not procure additional vehicles from Oshkosh in 2019, because the Army's September 2016 J&A estimates that it would only require 1,774 additional tactical vehicles. Pl. 1st Mot. at 17. But, it is well-established that the Army's estimate of its requirements is not a guarantee or warranty of the exact quantity required. *Shader Contractors, Inc. v. United States*, 149 Ct. Cl. 535, 545 (1960).

Navistar also points to no evidence in the administrative record to show that the Army failed to estimate the number of tactical vehicles that it expected to require in good faith. *See generally* Pl. 1st Mot.; *see also Technical Assistance Intern., Inc. v. United States*, 150 F.3d 1369, 1372 (Fed. Cir. 1998). Navistar similarly fails to identify any evidence in the administrative record to show that the Army could not procure more than the 1,774 additional tactical vehicles originally estimated in the September 2016 J&A. Pl. 1st Mot. at 17-20. As discussed above, the plain terms of the FMTV Contract and the solicitation for the contract make clear that the FMTV Contract is a requirements contract. Given this, Navistar simply has not shown that the September 2016 J&A limits the number of vehicles that the Army may procure.

Navistar's argument that the Army's 2019 sole-source contracting action is improper, because the Army previously issued a justification and approval before procuring additional tactical vehicles, is equally unavailing. *Id.* at 19-20. While Navistar correctly observes that the Army previously issued a justification and approval before placing orders for additional tactical vehicles under the FMTV Contract, Navistar points to no statute or regulation that requires that the Army do so.[5] *Id.* Given this, the Court is not persuaded that the Army's decision not to issue

---

[5] Navistar also correctly observes that the Army placed its order for additional tactical vehicles before issuing the amendment to the September 2016 J&A and its June 17, 2019 Determination and Findings. Pl. 1st Mot. at 23. But, to the extent that the Army erred in doing so, Navistar fails to explain how it has been prejudiced by such an error. *Id.* at 35-38; *see also Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004). Navistar's argument that the Army could not amend the September 2016 J&A is also misplaced. *Id.* at 26-27. As the government persuasively argues in its consolidated

a justification and approval before ordering additional tactical vehicles from Oshkosh in 2019 shows that the Army's 2019 sole-source contracting action materially departs from the scope of the original procurement for the FMTV Contract.

Because the record evidence shows that the Army's 2019 sole-source contracting action did not materially differ from the original procurement for the FMTV Contract—and that this contracting action is authorized under the terms of the FMTV Contract—Navistar has not shown that the Army's contracting action constitutes a cardinal change.  And so, and the Court **DENIES** this claim.

### D.    Navistar's Remaining Claims Related To The Army's 2019 Sole-Source Contracting Action Lack Merit

Navistar's remaining challenges to the Army's 2019 sole-source contracting action are also unsubstantiated by the administrative record.  First, Navistar's claim that the Army improperly extended the term of the FMTV Contract is belied by the evidence in the administrative record showing that the Army's 10-year extension of the term of the FMTV Contract is consistent with CICA.  Pl. 1st Mot. at 21-22; Pl. 1st Resp. at 7-8.  Pursuant to Section 2304a(f) of CICA, "[t]he total contract period as extended may not exceed 10 years unless such head of an agency determines in writing that exceptional circumstances necessitate a longer contract period."  10 U.S.C. § 2304a(f).  As discussed above, the record evidence in this case shows that the Army extended the term of the FMTV Contract until August 25, 2019—ten years after the original effective date for that contract.  AR Tab 14 at 879, 882; AR Tab 106 at 5895.  Given this, the record evidence shows that the Army's contract extension did not violate CICA.

Navistar's claim that the Army improperly extended the performance period under the FMTV Contract is also unsubstantiated.  As Navistar correctly observes, Section 217.204(e)(iii) of the Defense Federal Acquisition Regulation Supplement ("DFARS") requires that an agency obtain approval from a senior procurement executive before extending a contract if performance under that contract will extend more than one year beyond the 10-year limit.  DFARS 217.204(e)(iii).  Again, the record evidence shows that the Army complied with this requirement.

---

cross-motion, FAR 1.102(d) allows the Army to assume that its decision to amend this justification and approval is permissible, unless doing so is explicitly prohibited by the FAR, statute, case law, executive order or other regulation.  Def. Mot. at 26-29.

The Army's Determination and Findings dated, June 17, 2019, states that the Army "extends the delivery period [for the FMTV Contract] from [August 24, 2020] to [August 24, 2021], for a total of 12 years, for all orders issued during the contract's 10-year ordering period." AR Tab 111 at 5959.  Because this determination and findings extends the performance period for the FMTV Contract for more than one year beyond the 10-year limit for the term of the FMTV Contract, the Army appropriately obtained approval from a senior procurement official for this contract extension.  AR Tab 111 at 5960.  In this regard, the administrative record also shows that the Deputy Assistant Secretary of the Army for Procurement signed the Army's Determination and Findings, dated June 17, 2019—consistent with the requirements of Section 217.204(e)(iii).  *Id.*  And so, again, Navistar has not shown that the Army's extension of the FMTV Contract is contrary to CICA, or the applicable procurement regulations.[6]

### E.    Navistar's Request For Injunctive Relief Related To The CICA Automatic Stay Is Moot

Navistar's final claim—that the Army disregarded the automatic stay requirement under CICA during Navistar's recent protest before the GAO—also fails because this claim is moot.

Navistar contends—and the government appears not to dispute—that the Army did not stop work on its order for additional tactical vehicles once Navistar filed a GAO protest challenging the Army's 2019 sole-source contracting action.[7]  Pl. 2nd Mot. at 11-15; Def. Reply at 27-29; *see also* 31 U.S.C. § 3553(d)(3)(B) (prohibiting a federal agency from permitting performance by a contract awardee while a GAO protest is pending, absent an override of the CICA stay).  And so, Navistar seeks, among other things:  (1) an injunction and grant of declaratory or other relief "as necessary to remedy the Army's failure to order Oshkosh to stop work;" (2) an injunction prohibiting the Army from "making any argument in any bid protest regarding the costs from continued performance of orders protested in the GAO Protest;" (3) an

---

[6] Navistar's contention that the Army may not fill foreign military sales orders under the terms of the FMTV Contract is similarly belied by the record evidence.  The FMTV Contract provides that the Army "may issue delivery orders against this contract to fulfill Foreign Military Sales commitments undertaken by the U.S. Government on behalf of a foreign country."  AR Tab 14 at 1418.

[7] Navistar alleges that the Army:  (1) failed to comply with CICA and its implementing regulations; (2) failed to comply with the CICA automatic stay override requirements; (3) failed to notify GAO of its noncompliance with the CICA automatic stay; and (4) violated the Anti-deficiency Act.  Pl. 2nd Mot. at 11-15.

injunction prohibiting the Army from relying on its continued performance of the orders protested to support any future sole-source action; and (4) entry of a declaratory judgment that the Army's failure to order Oshkosh to cease performance of the orders protested was arbitrary, capricious, or contrary to law. Pl. 2nd Mot. at 20. Because Navistar has withdrawn its GAO protest, the Court agrees with the government that Navistar's claim for this injunctive relief is moot.

In *Harris Patriot Healthcare Solutions v. United States*, this Court was previously confronted with the question of whether a protestor's request for injunctive relief based upon an alleged violation of CICA's automatic stay requirement was moot, because the underlying GAO protest had been dismissed. 95 Fed. Cl. 585 (2010). In that case, the Department of the Interior ("DoI") failed to immediately comply with the CICA automatic stay when the GAO protest was filed, but the agency later implemented the stay of performance shortly after the protestor filed a bid protest action challenging the violation of the CICA automatic stay in this Court. *Id.* at 590. After the DoI took corrective action related to the GAO protest, the GAO protest was dismissed. *Id.* at 591.

The Court held in *Harris* that the dismissal of the GAO protest "removed a prerequisite to CICA's automatic stay—the pendency of a GAO protest." *Id.* at 593. For that reason, the Court observed that it was unclear what injunctive relief plaintiff would be entitled to "maintain the status quo" in connection with that bid protest litigation. *Id.* The Court also held that, while the DoI's voluntary issuance of a stop work order would not necessarily moot plaintiff's claim, there was no reasonable expectation that the agency's violation of the CICA stay would be repeated, because "there was no longer any CICA stay in effect due to the dismissal of the GAO protest." *Id.* at 595. And so, the Court concluded that plaintiff's request for injunctive relief was moot. *Id.* at 593-94.

Similarly here, there is no dispute that Navistar voluntarily withdrew its GAO protest of the Army's 2019 sole-source contracting action on August 26, 2019, and there is no protest currently pending before the GAO. AR Tab 168 at 11798; AR Tab 169 at 11799. And so, like in *Harris*, there is no reasonable expectation that the Army's violation of the CICA stay would be repeated, because there is no longer any CICA stay in effect due to the dismissal of Navistar's GAO protest. *Harris*, 95 Fed. Cl. at 595. Navistar contends, nonetheless, that injunctive relief is

warranted here, because the government may rely upon the performance costs that the Army incurred during the pendency of Navistar's GAO protest to argue against an award of injunctive relief in this bid protest litigation.  Pl. 2nd Mot. at 16-17; Pl. 2nd Reply at 13.  But, as the government correctly observes, the government has not raised such an argument in this litigation.  Def. Mot. at 34-41; *see also* Def. Reply at 28-29.

Navistar's request for an injunction prohibiting the Army from relying upon its continued performance of the orders protested to support "any future sole source action" is also problematic.  Pl. 2nd Mot. at 20.  Navistar points to no evidence to show that the Army plans to order additional tactical vehicles from Oshkosh upon a sole-source basis.  *See generally id.*; Pl. 2nd Reply.  Given this, the Court **DENIES** Navistar's CICA override claim as moot.  *Harris*, 95 Fed. Cl. at 595.

### F.      Navistar Is Not Entitled To Injunctive Relief

As a final matter, Navistar also has not shown that it is entitled to the other injunctive relief that it seeks in this case.  Navistar requests, among other things, that the Court enjoin the Army from proceeding with existing orders or placing new orders under the FMTV Contract.  Pl. 1st Mot. at 38; Pl. 2nd Mot. at 20.  But, as discussed above, Navistar has not succeeded upon the merits of any of its claims challenging the Army's 2019 sole-source contracting action in this litigation.  Because Navistar has not demonstrated success upon the merits of its claims, Navistar cannot prevail on a motion for permanent injunctive relief.  *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 176 (2005).  And so, the Court must also **DENY** Navistar's requests for injunctive relief.

## IV.     CONCLUSION

In sum, the Court agrees with Navistar that certain portions of the Riley Declaration; the Army's September 19, 2016 Determination and Findings; and the references to a July 12, 2019, phone call between counsel, should be stricken from the government's consolidated cross-motion in this bid protest litigation.  The administrative record also shows that Navistar has waived certain arguments related to the FMTV Contract under the terms of its settlement agreement with the Army.

In addition, the record evidence makes clear that the Army's 2019 sole-source contracting action does not constitute a cardinal change, or violate the FMTV Contract or applicable law, and that Navistar's remaining challenges to this contracting action are not supported by the administrative record.  Lastly, Navistar's CICA override claim is moot and Navistar has not shown that it is entitled to the injunctive relief that it seeks in this litigation.

And so, for the foregoing reasons, the Court:

1. **DENIES** Navistar's motions for judgment upon the administrative record;

2. **GRANTS** the government's consolidated cross-motion for judgment upon the administrative record;

3. **GRANTS** Oshkosh's cross-motion for judgment upon the administrative record;

4. **GRANTS-IN-PART** Navistar's motion to strike the Declaration of Lt. Col. Michael K. Riley;

5. **GRANTS** Navistar's motion to strike the Army's Determination and Findings dated September 19, 2016, and certain references to the July 12, 2019, telephone call between counsel;

6. **DENIES-AS-MOOT** Navistar's motions for a temporary restraining order and for a preliminary injunction, and to complete the administrative record and for leave to conduct limited depositions; and

7. **DISMISSES** the complaints.

The Clerk shall enter judgment accordingly.

Each party to bear its own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on August 27, 2019.  This Memorandum Opinion and Order shall therefore be filed **UNDER SEAL**.  The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to

publication.  The parties shall **FILE** a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction on or before **January 13, 2020**.

       **IT IS SO ORDERED.**


                s/ Lydia Kay Griggsby
                LYDIA KAY GRIGGSBY
                Judge